**Shannon D. CHRONISTER, on Behalf of Cassandra L. MORRISON, A Minor, Appellee,**

v.

**Timothy R. BRENNEMAN, Appellant.**

Superior Court of Pennsylvania.

Argued May 12, 1999.

Filed Nov. 24, 1999.

John J. Moran, II, York, for appellant.

Before POPOVICH, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from the entry of a Protection From Abuse Order. Appellant raises a single issue, does the Protection From Abuse Act, 23 Pa.C.S.A. § 6102(a), prohibit a parent from using physical punishment to discipline a child for misconduct? We reverse.

¶ 2 The relevant facts do not appear to be in dispute. On the morning of May 18, 1998, appellant administered corporal punishment to his sixteen-year-old daughter, Cassandra Morrison, in the form of hitting her four or five times with a folded belt across the buttocks after she admitted lying to appellant. Ms. Morrison testified that the strapping was painful and made her cry. After the incident she went to school and later reported the incident to her guidance counselor who refused to take action. Ms. Morrison then called her older half-sister, Shannon Chronister, appellee here, and told her what had happened. Ms. Chronister then contacted CYS and reported the incident. A caseworker for CYS met with Cassandra the next day. However, CYS ultimately refused to intervene because the behavior alleged was not viewed as implicating CYS involvement.

¶ 3 Later on the evening of May 18, 1998, and perhaps prompted by the incident that morning, appellant and his girlfriend were having a discussion with Ms. Morrison on the "rules of the house." Shortly thereafter appellant left the kitchen table and retrieved a pistol from a cupboard, looked at the gun, walked by Ms. Morrison and proceeded upstairs. Appellant testified that he had remembered that he left the gun downstairs and retrieved it, checked to make sure it was unloaded, then took it upstairs to a closet where he stores his firearms. Ms. Morrison testified that she had eye contact with appellant as he walked by.

¶ 4 The next day a Petition for Protection From Abuse was filed and a temporary order was signed on May 20, 1998. A hearing was held on May 29, 1998, to see if the parties could reach an amicable resolution, but the parties were unable to reach an agreement. Thus, a full hearing was scheduled for July 15, 1998. At the hearing of July 15, 1998, Ms. Morrison testified to the above facts and also to being frightened and intimidated by the incident as well as by appellant's statements that similar punishment would follow if Ms. Morrison continued to break the rules. Appel-

lant also testified and essentially admitted the relevant facts. Appellant asserted that his actions were solely designed to discipline Cassandra and that he felt it was appropriate and necessary given her history of jumping to various caregivers whenever she did not get her way.[1] On October 8, 1998, the court entered the subject PFA order. The present appeal followed.

¶ 5 Before us is the issue of whether or not appellant's conduct in disciplining/punishing his sixteen year-old daughter falls within the definitions of the Protection from Abuse Act. We conclude that it does not.

¶ 6 We would state initially that nothing in this Opinion should be construed to be an approval or condoning of appellant's choice of discipline. Undoubtedly, many individuals regarded as authorities in child rearing would certainly cringe at appellant's choice of punishment for his sixteen-year-old daughter. On the other hand, neither should this Opinion be construed as disapproving of, or critical of, appellant's conduct. Undoubtedly, many individuals believe in the old adage "spare the rod and spoil the child." The topic is certainly suitable for a barstool or roundtable debate. However, it is not for us to dictate, as a policy matter, how a parent should choose to discipline his or her child.

¶ 7 Further, the trial court's lengthy discussion relating to current viewpoints regarding corporal punishment, while interesting and instructive, is, in our opinion, mostly irrelevant. The fact of relevance is that our law allows a parent to administer corporal punishment.[2] The fact that a father chose to discipline his child through the means of corporal punishment is relevant only to the extent it reflects the motivation for the physical conduct in question. In other words, it is

relevant only to reflect appellant's state of mind. Beyond this, we choose not to pass judgment on the appropriateness or inappropriateness of appellant's choice of discipline.

¶ 8 While appellant's parental judgment and choice of discipline can certainly be called into question, his motivation appears beyond reproach. That is, there appears to be a lack of any evidence to support the conclusion that appellant's acts were intended to be anything other than punishment for a young woman who the trial court admits "has taxed her father's patience to the limit." Thus it appears clear that the strapping of his daughter across the buttocks, in appellant's mind, constituted "punishment." There is no evidence that it was a malevolent infliction of pain or an attempt to terrorize his daughter, nor did the trial court conclude to the contrary.

¶ 9 Nevertheless, this is not to say that appellant's actions, regardless of innocent intent, cannot amount to "abuse" within the contemplation of the Act. But clearly intent is an important element in the equation. If it had been demonstrated that appellant conducted a sadistic reign of terror upon his daughter strapping her on a frequent basis, we would be inclined to affirm the trial court's disposition. After all, good intentions, regardless of how well founded they are, cannot be an excuse for the frequent infliction of physical or mental pain and/or the terrorizing one's children. In the present case, however, such a factual foundation is absent. What remains is the infliction of a painful, yet otherwise relatively harmless, "good, old fashioned whooping" of appellant's daughter. Thus, the question as we see it is whether or not appellant's conduct constitutes abuse within the meaning of the Act.[3]

¶ 10 "Abuse," as defined in the Act encompasses, in relevant part, attempting to

---

1. Apparently Ms. Morrison had lived in the homes of her mother, paternal grandmother and appellee in addition to appellant's home.

2. See discussion *infra*.

3. The trial court relies upon 23 Pa.C.S.A. § 6102(a)(1) in granting the PFA order. This subsection focuses upon causing or intending to cause "bodily injury." The court also interjects commentary regarding appellant's pulling a gun out in front of his daughter, yet

cause or intentional, knowingly or recklessly causing bodily injury or serious bodily injury. 23 Pa.C.S.A. § 6107(a). At 18 Pa.C.S.A. § 2301 "bodily injury" is defined as "impairment of physical condition or substantial pain." In the present case, although the strapping of Cassandra, according to her testimony, "was painful and made her cry," there is no indication that it resulted in anything more than a temporary painful condition, which, of course, was its intent. Nor was there any indication that the punishment resulted in any degree of bodily impairment. In fact, Cassandra told Cindy Leik, who works for CYS, that the strapping did not leave any bruises. Consequently, we do not think the conduct in question amounts to "abuse" for purposes of the Act.[4]

¶ 11 We believe the above conclusion is bolstered by 18 Pa.C.S.A. § 509 which, although sounding as a justification defense in the criminal law arena, has been characterized as codifying a parental "privilege" to administer corporal punishment. This section allows the use of force upon another under certain circumstances. For our purposes subsection (1) is relevant and provides for the use of force if the actor is a parent and the force is used for the purpose of safeguarding or promoting the welfare of a minor, including the prevent-

ing or punishment of his misconduct, where the force is "not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, or mental distress or gross degradation." Cases interpreting this provision have stated that parents may use corporal punishment to discipline their children "so long as the force used is not designed or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain, or mental distress or gross degradation." *Appeal of E.S.*, 82 Pa.Cmwlth. 168, 474 A.2d 432 (1984). Other cases have referred to the parental "privilege" to administer corporal punishment. *See Commonwealth v. Ogin*, 373 Pa.Super. 116, 540 A.2d 549 (1988). If the activity found in the present case were viewed as violating the Protection From Abuse Act then a parent could exercise his or her "privilege" only to suffer the rather inconsistently seeming consequence of losing custody of the child or being banished from his or her home. This seems grossly illogical.

¶ 12 For the above reason we reverse the order appealed from.[5]

¶ 13 Order reversed. Jurisdiction relinquished.

¶ 14 ORIE MELVIN, J., files a Dissenting Opinion.

did not appear to rely upon subsection (a)(2) in entering its order. 23 Pa.C.S.A. § 6102(a)(2) targets a person's placing of another in "reasonable fear of imminent serious bodily injury." Although the trial court does not specifically raise this issue we would be disinclined to find that this subsection was met by appellant's actions in retrieving the gun and relocating it upstairs. The action was unaccompanied by any verbal threat and the circumstances certainly do not suggest that appellant was "threatening to shoot his daughter" if she continued to disobey him or was a threat to do so.

4. Contrast the present case with *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252 (1995), wherein a panel of this court affirmed the entry of a PFA order against a father who had struck his seven-year-old son with a board across the legs which caused bruises.

5. One certainly gets the impression that, in the present case, the PFA law has been injected where it does not belong. Although the issue presented might be an appropriate matter for custody court, there is no indication that the PFA law was meant to be utilized to question a parent's personal choice of discipline except for in the rarest of circumstances where a child's welfare is truly jeopardized by the conduct in question. We are unwilling to essentially label appellant an "abuser" of his child merely because his viewpoints on parenting might be viewed as "old fashioned" and out of favor with today's parenting "experts." If allowed to stand one must wonder where we will head next, will any parent who spanks his child be ripe for having a PFA slapped upon him/her?

ORIE MELVIN, J., Dissenting:

¶ 1 An accurate review of the record reveals that appellant beat his daughter with a belt severely enough to cause bruising and handled her so that imprints from his fingers remained on her body. On the same day he administered this form of "discipline" and while discussing with Cassandra the house rules, appellant felt the need to remove his gun while in his daughter's presence. Based on these circumstances and the fact that appellant admitted he would administer the same form of punishment again if he deems it is warranted, the trial court granted Cassandra's protection from abuse petition. I believe the evidence warranted the protection from abuse order. Furthermore, because the Majority disregards the trial court's factual findings and credibility determinations and instead, picks and chooses testimony which would support its holding, I dissent.

¶ 2 Initially, I would note that the Majority's failure to state the standard of review is telling. When a claim is presented on appeal alleging that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super.1999). This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. *Alfred v. Braxton*, 442 Pa.Super. 381, 659 A.2d 1040, 1043 (1995).

¶ 3 In *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252 (1995), a mother filed a protection from abuse petition against appellant father when her son reported that appellant struck him with a wooden board. The trial court granted the petition and ordered father to refrain from abusing, harassing, or threatening his children. On appeal, he contended that bodily injury was not established within the meaning of the Protection from Abuse Act. We affirmed the trial court's issuance of the PFA order and rejected appellant's contention, finding more than sufficient evidence to establish the existence of bodily injury. The evidence included testimony from the child that his father struck him with a board on his leg. The child indicated that he experienced pain and developed a bruise. The child also testified that his father gripped his arm, which also produced a bruise. Photographs of the bruises were also introduced at the hearing.

¶ 4 In the present case the Majority states that there is no indication that Cassandra's punishment resulted in any degree of bodily impairment. The Majority attempts to distinguish this case from *Miller*, by stating that the strapping of Cassandra did not leave any bruises. It relies on testimony from CYS caseworker, Cindy Leik, in which she indicated that Cassandra told her she did not have any bruises. If Ms. Leik's testimony was the only evidence of bodily injury, I would have to agree with the Majority. However, the Majority conveniently fails to consider testimony from Cassandra that she received a bruise on her thigh and that she had handprints on her from being hit by her father. N.T., Hearing, 7/15/98, at 6. Her father's beating with his belt caused the girl pain and made her cry. *Id.* at 5. The trial court found Cassandra's testimony credible, noting that her testimony was corroborated by her sister who testified that Cassandra had fingerprints on her arm and bruises on her leg. *Id.* at 22. Moreover, in finding a bodily injury occurred the trial court further took into consideration Ms. Leik's testimony that she did see a bruise on Cassandra's arm and that she did not examine the child's leg personally for bruises. *Id.* at 26. The Majority disregards the trial court's factual findings and its credibility determinations, which are clearly supported by the record. Viewing the evidence in the light most

favorable to Cassandra, I believe the trial court's conclusion that she suffered a bodily injury is supported by a preponderance of the evidence. Moreover, the trial court's conclusion is supported by this Court's decision in *Miller*.

¶ 5 The Majority opines that because there is no indication that Cassandra's punishment resulted in anything more than a temporary painful condition, she is not warranted protection from further beating. Nothing in the statute requires that the pain must be of a continuing nature. The pain must be only be "substantial" in nature. 18 Pa.C.S.A. § 2301. I believe the Majority should not make light of such pain. I would submit that thrashing a young lady with a belt hard enough to produce bruising and handling her in such a manner as to leave the imprint of a hand on her body would produce a "substantial" amount of pain. The Majority also makes light of appellant's action of retrieving his gun while in his daughter's presence. The trial court was disturbed by the appellant's action and found the appearance that appellant created by pulling out his gun was inappropriate. I believe that when this action is viewed in light of the surrounding circumstances, including the fact that appellant had just recently beat her and at that time was discussing his rules with Cassandra, the trial court's concern cannot be dismissed so easily.

¶ 6 I agree that the Protection from Abuse Act was not designed to prevent a parent from using corporal punishment. However, the Act provides a remedy in situations where bodily injury is inflicted intentionally, knowingly, or recklessly on a family or household member. Such a situation exists where a minor is left with bruises and finger print marks on her body from punishment inflicted by a parent. *Miller*. As this Court noted in *Viruet ex rel. Velasquez v. Cancel*, 727 A.2d 591 (Pa.Super.1999), "[i]t is well known by most parents that corporal punishment properly inflicted will not produce bodily injury in a child. However, 'corporal punishment' inflicted recklessly or in an enraged manner may result in bodily injury." *Id.* at 596. In this case the punishment Cassandra received, which left lasting imprints on her body goes beyond mere corporal discipline and rises to the level of abuse within the meaning of the Protection from Abuse Act. While I recognize in this Commonwealth parents have a right to inflict corporal punishment on their children, their right to do so is restricted. The trial court found through the evidence presented that Appellant crossed the line of moderation and reasonableness in correcting his daughter's behavior. His corrective measures went beyond what is reasonable punishment for purposes of behavior modification and instead rose to the level of abuse. The severity of appellant's punishment of Cassandra demonstrates not a concern to correct her behavior but instead appellant's attempt to satisfy his passions as an enraged parent frustrated with his daughter's disobedience. As I believe the Majority's holding is contrary to both this Court's decision in *Miller* and the evidence presented below, I must dissent.