J-S65038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: York County Office of Children, Youth and Families | : : : : : : | |
| | : | No. 1089 MDA 2018 |

Appeal from the Order Entered June 4, 2018
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000158-2009

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED DECEMBER 21, 2018**

The York County Office of Children, Youth and Families ("CYS") appeals from the order denying its petition seeking a finding that K.W. and A.W. perpetrated child abuse. We conclude the trial court did not abuse its discretion in finding CYS failed to establish by clear and convincing evidence that child abuse occurred. We affirm.

In January 2018, K.M. ("Child"), born November 2001, resided with her legal custodians, K.W. and A.W. On February 1, 2018, CYS received a referral for physical abuse against Child by K.W. and A.W. for an incident that occurred on January 31, 2018. CYS obtained a verbal order to place Child with her mother. Following a February 5, 2018, shelter care hearing, the court ordered that Child remain with her mother. On February 7, 2018, CYS filed a dependency petition claiming Child lacked proper parental care and control. It also requested a finding of child abuse against K.W., as the perpetrator of

physical abuse, and A.W., as a perpetrator by omission. K.W. and A.W. are not seeking the return of Child.

The trial court held a hearing on the petition.[1] Child testified that she had resided with K.W. and A.W., and their children and foster children, for three years. N.T., 5/7/18, at 29-30. She testified that on the evening of January 31, 2018, she returned home, and a police officer was at the residence to ask her questions regarding pills she had stolen from another child who resided at the home. *Id.* at 31-32. Later that night, K.W. came into Child's room with a belt in his hand. *Id.* at 37. He told her to stand up, pulled her off the bed, and said, "I am tired of you stealing stuff from my house." *Id.* He then beat her with the belt on her left thigh. *Id.* at 37-38. She stated he was holding the belt in a loop with his hand over the buckle. *Id.* at 38. She stated he hit her off and on for ten-to-15 minutes and it felt like her "leg was on fire." *Id.* at 39. She stated that after dinner she started packing to leave the home. *Id.* at 42.

Child testified that when A.W. returned later that night, she spoke with Child. Child told A.W. what happened and showed A.W. her leg, which was black and blue. *Id.* at 43. A.W. advised Child to take a shower and said Child "had got [her] first [W.] house beating." *Id.* at 43-44. Child further testified that A.W. observed her limping, but said she would be fine. *Id.* at 46.

---

[1] The hearing was continued to allow time for discovery.

Child told K.W. that she did not want to go to gym class the next day because she would be wearing shorts, and he told her he would take her to school after gym class. *Id.* The next day, although school started at 7:35 a.m., K.W. did not take Child until 9:00 a.m. *Id.* at 45. While at school, Child went to the nurse for pain medication. *Id.* at 45-46. She described the pain as a nine on a scale of one-to-ten, and stated she was limping. *Id.* at 46.

The nurse put ice on the bruise, and Child's caseworker took her to see Dr. David Pater, Child's primary care doctor. *Id.* at 48. Dr. Pater gave her pain medication and referred her to York Hospital. *Id.* at 49. The doctors at the hospital told her to take the medication prescribed by her primary doctor and to walk to avoid stiffness. A nurse also took photographs of her leg, which were admitted into evidence and showed bruising to her thigh. *Id.* at 53. She walked with a limp for around one week. *Id.* at 54. Child returned to the care of her mother, where she remains. *Id.* at 53.

Dr. Pater testified that he treated Child on February 1, 2018, due to an "extensive purplish area of discoloration and tenderness" on her thigh. *Id.* at 76-77. Child told him that she had been struck with a belt, and that the bruise was painful and made it difficult to walk. *Id.* a 77-78. He testified that Child's explanation of the injury was consistent with his observations. *Id.* at 79. Dr. Pater testified that he recommended she go to the emergency room to be assessed by a SAFE nurse, who would conduct a forensic assessment regarding the question of abuse. *Id.* at 78, 80-81. The doctor did not have concerns that any bones were broken, believed it was something that would

heal on its own, and agreed that Child could do regular activities as she tolerates. *Id.* at 80-81.

Mitra Honardoost, a CYS caseworker, also testified. She accompanied Child to the doctor and hospital on February 1, and testified consistently with Child as to the events of that day.

Chelsea Rhoads, a CYS case worker, testified that on February 1, 2018, she visited the home of K.W. and A.W. due to the allegations of abuse. *Id.* at 172-73. She spoke with A.W, who told her that K.W. did hit Child with a belt. *Id.* at 173. A.W. also informed Ms. Rhoads that she does use a belt and her hands for discipline, but does not use anything that would cause severe injury. *Id.* at 175. K.W. refused to speak with Ms. Rhoads. *Id.* at 174.[2]

Mark Shrode, a DHS investigator, testified regarding the investigation that led to him finding an indication for abuse against K.W. as to Child, which included reviewing a child advocacy center interview of Child, the medical records, and the photographs. *Id.* at 187-99. Bethany Gamber, a counselor at Child's high school, testified regarding her interaction with Child on February 1, 2018. *Id.* at 199-207. Michelle Frey, the forensic SAFE nurse who examined Child, also testified. *Id.* at 209. The testimony included that Child stood for about 15 minutes while Frey took photographs of her leg. *Id.* at 215-16.

---

[2] Ms. Rhoads also spoke with the other children in the home, An.W., M.L., A.L., K.M., Av.W., and C.P. *Id.* at 173-74.

K.W. testified that he has a disability. N.T., 6/4/18, at 3. He had a discectomy and laminectomy of the L-5 lumbar disc, which causes him to have limited mobility. *Id.* He cannot reach back, bend back far, or twist his upper body too far. *Id.* at 10. Also, his right arm cannot go back more than approximately six inches from his hip. *Id.* at 10-11. He has nine children, ranging in age from eight to 35. *Id.* at 3. Three of the children are biological and six are adopted. *Id.* at 4.

In October 2017, K.W. contacted CYS because he and A.W. were having issues with Child's "manipulation, triangulation, lying, stealing, [and] aggressive behavior towards smaller kids." *Id.* at 4-5. He did not ask for removal at that time. *Id.* at 6. He testified that on January 31, 2018, he called the police because his son informed him that Child stole prescription medication from K.W.'s daughter. *Id.* at 6. Later that evening, he went upstairs, got his belt, and told Child that he was "really tired of her deciding to steal out of" his home. *Id.* at 8. He stated he "attempted to spank her," but she "jumped up against her desk and she was turning her body as to me not being able to spank her." *Id.* at 9. He decided to use this discipline because he had "exhausted all other methods of discipline." *Id.* at 10. He had "tried modelling[,] tried positive reinforcement[, and] tried taking away privileges, no extracurricular activities." *Id.* The other forms of discipline had not changed Child's behavior. *Id.* When Child said stop, he did. *Id.* at 11. The incident lasted for about one minute. *Id.* Although Child initially started packing, she stopped when she saw that a police car still was outside, and,

after she and K.W. talked for about 45 minutes, she decided to put her things away. *Id.* at 11-12. Child was not crying, did not ask for pain killers, and was not limping. *Id.* at 13-14.[3]

K.W. took Child to school the next day, but testified that was not unusual. *Id.* at 15. He testified that there was an agreement between Child and A.W. that Child could go to school late that morning. *Id.*

A.W. testified that while Child lived with her and K.W., they had issues with K.M.'s "lying, stealing, [and] manipulation," and because she was "hypersexual." *Id.* at 28. On the night of January 31, 2018, A.W. attended a master's course, and arrived home around 10:30 p.m. *Id.* at 32-33. K.W. told her that he had spanked Child, and A.W. went to speak with Child. Child recounted the incident, including that K.W. had hit her four-to-five times. *Id.* at 34. They proceeded to talk about everything, including her family, about the police charges for the stolen prescription drugs, and about encouraging Child. *Id.* at 35. A.W. saw Child's leg, which had a mark on her upper hip that was "probably the width of . . . two fingers." *Id.* at 36. It was a light pink color. *Id.* There was no bruising at that point. *Id.* She said that Child said she had not showered yet, so A.W. told her to do so. *Id.* Further, they discussed that, because Child was up so late, she could sleep in the next morning. *Id.* at 37. A.W. never told Child that "it looks like she got her first W[.] [h]ouse whooping." *Id.* at 37. She stated that if Child's leg looked like it did in the

_____

[3] The parties stipulated that K.W. was charged with simple assault and harassment related to the January 31, 2018 incident. *Id.* at 170-71.

pictures, K.W. "wouldn't have been sleeping because I would have wanted to know why her leg looked like that," and she would have sought some level of medical attention. *Id.* at 38. She stated she told Ms. Rhoads about the incident on January 31, 2018, but never said that they used a belt or hands any other time. *Id.* at 43-44. She further testified that Child bruised easily. *Id.* at 53.

Dr. Marcus Degraw, a pediatrician and child abuse pediatrician, testified that Child's bruising was "significant," but "the injury itself isn't really severe." N.T., 5/18/18, at 10. He stated "it was not an injury on the surface that [he] would expect to cause significant limitation for any length of time." *Id.* at 11. He further testified that, although the "broad" bruising that "cover[ed] an entire body part and surface area rather than a very specific pattern" could be consistent with being hit by a belt multiple times, it was not "typical" of bruising from being hit with a belt. *Id.* at 17. He would have been concerned that the child "might be more prone to bruising and bleeding, and, therefore, the bruising and bleeding might be more significant than you might expect or different than you might expect." *Id.* at 18.

The trial court found that CYS did not support by clear and convincing evidence a finding of abuse as to K.W. and A.W. *Id.* at 84-85. It concluded that although "it heard testimony that [K.W.] did engage in corporal punishment with the use of a belt in disciplining the minor youth, [it] does not believe the evidence substantiates a clear and convincing finding that said discipline meets the definition of child abuse under Pennsylvania statute." *Id.* at 85. The court found that the "conduct did not cause substantial pain to the

child or impairment of the child's physical condition." Trial Court Op., July 6, 2018, at 1 ("1925(a) Op.").

CYS filed a timely notice of appeal. On appeal, the agency raises the following issues:

> A. The trial court erred by failing to find abuse pursuant to 23 Pa.C.S. §6303(b.1)(1) where there was clear and convincing evidence that the minor child, [K.M.], was struck with a belt by her legal custodian, [K.W.], more than once, which resulted in injury to [K.M.].
>
> B. The trial court erred by failing to give appropriate weight to the evidence of [K.M.]'s injury, which included credible testimony of the witnesses who observed the minor child to be in substantial pain and to be limping, as a result of her injury.
>
> C. The trial court erred by misapplying 23 Pa.C.S. §6304(d), which permits the use of reasonable force by a parent or guardian on or against a child for the purposes of discipline, in this case because the legal guardian's use of force was not reasonable under the circumstances as it caused severe bruising to [K.M.]'s leg that required medical evaluation.
>
> D. The trial court erred by failing to make any findings of fact to support its decision that [K.M.] was not a victim of child abuse by her legal custodian, [K.W.].

CYS's Br. at 5.

In dependency cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record" and we review the determinations for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). As part of a dependency adjudication, a trial court may find a person to be "the perpetrator of child abuse." *Id.* at 1176. To do so, it would need to find clear and convincing evidence of child abuse as

defined by the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301 *et seq.* ("CPSL"). *Id.* The CPSL defines "child abuse" in relevant part as follows: "The term 'child abuse' shall mean intentionally, knowingly or recklessly doing any of the following: (1) Causing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S.A. § 6303(b.1)(1). The CPSL defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." *Id.* at § 6303(a).

CYS first argues that the trial court erred by failing to find abuse pursuant to 23 Pa.C.S.A. §6303(b.1)(1) where there was clear and convincing evidence that Child was struck with a belt by K.W. more than once, and that Child was injured.

The trial court found that K.W. struck child with a belt, but that CYS failed to establish, by clear and convincing evidence, that he caused an "impairment of physical condition or substantial pain." 1925(a) Op. at 1. The trial court heard testimony from numerous witnesses. Although Child testified she suffered pain and walked with a limp, and she reported to others those same symptoms, K.W. and A.W. also testified that Child did not inform them that she was in pain and they did not notice her limping. Further, although the pictures show a large bruise on her thigh, the trial court was not required to find that, because of the bruise and Child's testimony, K.W.'s actions caused Child to suffer impairment of physical condition or substantial pain. *Cf. Chronister ex rel. Morrison v. Brenneman*, 742 A.2d 190, 193 (Pa.Super. 1999) (affirming denial of protection from abuse order and finding appellant hit 16-year old child with belt, and, although child testified it "was painful and

made her cry," finding appellant's actions did not cause bodily injury as there was "no indication that it resulted in anything more than a temporary painful condition"). There was conflicting evidence regarding the seriousness of the injury inflicted and we cannot find, based on the totality of the evidence, that the trial court abused its discretion when it found CYS did not establish, by clear and convincing evidence, that child abuse occurred. *See* ***Commonwealth v. Ratushny***, 17 A.3d 1269, 1272 (Pa. Super. 2011) ("The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (quoting ***Commonwealth v. Lyons***, 833 A.2d 245, 259 (Pa.Super. 2003)).[4]

In its second issue, CYS argues the trial court failed to properly weigh the evidence. It argues that because Child and others testified that the bruise caused pain, that the trial court was required to enter a finding of child abuse. The court, however, also heard testimony that Child did not seek pain medication on the evening of January 31 and did not walk with limp that evening. Further, it heard testimony that although the bruising was substantial, it likely did not cause severe pain or lasting injury. We decline CYS's invitation to re-weigh the evidence. ***See Ratushny***, 17 A.3d at 1272.

---

[4] In support of its contention of trial court error, CYS cited ***Commonwealth v. Parks***, No. 262 WDA 2015, unpublished memorandum, (Pa.Super. filed July 28, 2015). Unpublished memoranda may not be relied on or cited by the parties or the court. ***Oliver v. Irvello***, 165 A.3d 981, 984 (Pa.Super. 2017); Superior Court Internal Operating Procedure § 65.37(A).

Next, CYS argues the trial court improperly determined that the use of force by K.W., a person responsible for Child's welfare, was reasonable. It argues the use of force was not reasonable because it caused severe bruising which required medical attention.

The CPSL excludes from the definition of child abuse "the use of reasonable force on or against a child by the child's own parent or person responsible for the child's welfare," where certain conditions apply. 23 Pa.C.S.A. § 6304(c). The trial court, however, did not reach that exception. Rather, the court found that Child did not suffer bodily injury, as required to establish child abuse occurred. CYS's issue, therefore, lacks merit.

In its last issue, CYS argues the trial court erred by failing to make any findings of fact to support its decision that Child was not a victim of child abuse by K.W. It argues the court failed to offer analysis of the testimony or physical evidence.

CYS cites no case law in support of its assertion that the trial court must make specific factual findings when finding child abuse did not occur. Further, although we agree that more discussion of the testimony and evidence would have been useful, we also note that the court did make two findings, that is, that child abuse did not occur and that Child did not suffer physical impairment or substantial pain. Because the findings are supported by the record, and we can determine from a review of the record that the trial court did not abuse its discretion, we decline to remand for additional findings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/21/2018