J-S13018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT GERRY KLUVER, JR., INDIVIDUALLY, AND ON BEHALF OF MINOR CHILDREN, J.D.K. & J.L.K. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1500 WDA 2023 |
| | : | |
| LEONA ELENA BRODA | : | |

Appeal from the Order Entered November 17, 2023
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  654 Civil 2023

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:            **FILED:  May 20, 2024**

Robert Gerry Kluver ("Father") appeals pro se from the order entered by the Somerset County Court of Common Pleas ("trial court"), denying his petition for protection from abuse ("PFA")[1] filed on his own behalf and on behalf of his minor children against Leona Elena Broda ("Mother").  Father argues that the trial court abused its discretion in denying his PFA petition, as the evidence established Mother abused their child.  We affirm.

Father and Mother were never married, but had three sons together, J.G.K. (born October 2002), J.D.K. (born June 2007), and J.L.K. (born January

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 23 Pa.C.S. §§ 6101-6122.

2009).[2]  The parties appear to have a contentious relationship and have each filed numerous petitions seeking custody modification over the children. Relevantly, on November 8, 2021,[3] the parties entered into a custody agreement for the two younger children, which superseded all prior orders.[4] The order stated Mother and Father shared legal custody, and Mother had primary physical custody and Father had partial physical custody during the school year and shared physical custody during the summer.  Importantly, the order also stated that the parties were prohibited from physically disciplining the children.

On November 6, 2023, Father filed a PFA petition on behalf of minor children and himself against Mother.[5]  Father alleged that Mother attempted to use an electronic device to tase J.D.K., and further noted other instances of abuse, including Mother beating J.D.K. with a belt.  The trial court held an ex parte hearing at which Father testified.  Subsequently, the trial court granted a temporary PFA order on behalf of minor children, which was

_____

[2] We will refer to the children involved in this dispute by their initials to protect their identity.

[3] The order was dated October 26, 2021, but not filed until November 8, 2021.

[4] J.G.K. was over eighteen years old at the time the trial court entered the custody order and therefore was not subject to the order.

[5] Father also filed a PFA petition on behalf of his minor children against J.G.K. The trial court ultimately denied the petition and Father filed a separate appeal.

effective until May 6, 2024. The order gave Father temporary custody of the minor children. The trial court denied the PFA petition as to Father, as there were no recent incidences of abuse alleged.

The trial court then held a hearing to determine whether a final PFA order should be entered.[6] The trial court interviewed J.D.K. and J.L.K. in chambers, outside the presence of Mother and Father. The record reflects that at the hearing, J.D.K. testified that he and Mother had an argument about the death of his bearded dragon and that in his anger, he punched the birdcage. N.T., 11/17/2023, at 7, 13-14. At this point, J.D.K. indicated that he heard Mother's taser "go off" and "fight-or-flight kicked in." *Id.* at 7, 12; *see also id.* at 10-11 (wherein J.D.K. described the taser as looking like a small flashlight and electricity comes out of the top and further noted that Mother used the device on their cats when they did something wrong). J.D.K. stated that he ran to his room, shut the door, and held the door shut. *Id.* at 7-8. He testified that Mother attempted to push the door open and again heard the click of the taser. *Id.* at 8. Mother eventually called J.G.K. to open the door; thereafter, J.D.K. opened the door and wedged himself between the door and the wall. *Id.* Mother came into the room, took J.D.K.'s laptop, and

---

[6] On November 6, 2023, Father also filed a petition for contempt of the custody order, noting that Mother violated the order prohibiting physical discipline of the children. That same day, Father filed an emergency custody petition, seeking full custody of the younger children. The trial court denied the petition for contempt, and that order is subject to a separate appeal.

left the room. *Id.* J.D.K. testified that Mother never used the taser on him. *Id.* at 11; *see also id.* at 11-12 (noting that a week before the incident, Mother stated she would use the taser on the children to bypass the custody order, but J.D.K. could not tell if she was being serious or joking).

The trial court asked J.D.K. whether Mother had physically disciplined him, and J.D.K. replied "yes." *Id.* at 15-16. He indicated on one occasion, Mother "smacked" him across the mouth with an open hand after he called her a bitch. *Id.* at 17-18. J.D.K. also stated Mother hit him with a lighter when she thought he was going to throw something at her. *Id.* at 18-19. Additionally, J.D.K. testified that on another occasion, Mother grabbed his face, yelled at him, and threw him onto his bed. *Id.* at 19-21. J.D.K. further noted that Mother had hit him with a belt prior to the entry of the November 2021 custody order. *Id.* at 21-22. J.D.K. acknowledged that Mother never hurt him, and that he sometimes takes things too far. *Id.* at 19-20, 23. J.D.K. stated that he liked spending time with his Mother and was not afraid of her or being at her home. *Id.* at 24.

J.L.K. testified that Mother had not physically disciplined him in over four years. *Id.* at 34. J.L.K. indicated Mother only yells at him if he does something wrong. *Id.* at 34-35. J.L.K. stated that his relationship with Mother was "pretty good." *Id.* at 33. Regarding the taser incident, J.L.K. confirmed that Mother and J.D.K. got into an argument about the care of his lizard and J.D.K. punched a birdcage during the argument. *Id.* at 36. J.D.K. ran into

his room and Mother followed holding her phone and the "flashlight" that she used to shock the cats. *Id.*; *see also id.* at 37 (describing the electronic device as having a "9-volt shock" and stating that Mother indicated that it was like "touching an electric fence"). J.L.K. stated that Mother had never shocked him with the taser and that he had never seen her shock J.D.K. *Id.* at 37; *see also id.* at 38 (noting that he only saw Mother use the taser on one occasion with the cats). However, J.L.K. admitted that Mother threatened to use the device on J.D.K. during the argument. *Id.*

After hearing the testimony, the trial court declined to enter a final PFA order and vacated the temporary PFA order. *See id.* at 43 (noting there were no grounds for the entry of a final PFA order in either case), 44 (stating that J.D.K., Mother, and J.G.K. "got upset and did things they probably, looking back, realized they shouldn't have done," but finding no acts of abuse that "would warrant the entry of a PFA order"), 46 (entering orders "vacating the temporary PFA [o]rders and denying the entry of a final PFA [o]rder"); *see also* Trial Court Opinion, 1/9/2024, at 2 (unnumbered) ("At the conclusion of the interviews with the [minor] children, it was clear that no 'abuse' had occurred as that term is defined in 23 Pa.C.S.[] § 6102 of the PFA Act.").

Father filed a timely appeal and a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. He raises the following questions for our review:

> 1. Did the trial court err as a matter of law and commit an abuse of discretion by vacating the temporary protection from abuse

order against [Mother] and subsequently denying entry of a final PFA order against [Mother] despite the preponderance of evidence that abuse had occurred?

2. Do any of [Mother's] acts, including threatening and attempting to shock a child with an electronic incapacitation device, meet the 23 Pa.C.S. § 6102(a) definition of "Abuse" under the Protection from Abuse Act?

Father's Brief at 5.

Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citations, quotation marks, and brackets omitted). "[W]e review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021). "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa. Super. 2020) (citation, quotation marks, and brackets omitted).

We will address Father's interrelated claims together. Father contends that the trial court abused its discretion by vacating the temporary PFA order against Mother and denying the entry of a final PFA order despite evidence establishing she abused the minor children. Father's Brief at 16, 28, 33, 38-

39, 43, 49-51. Father argues that Mother abused the minor children because she used the electronic device to attempt to shock J.D.K., approached J.D.K. in a threatening manner with the device, and had previously threatened to use the device against both children. *Id.* at 17, 20, 35-37, 39, 46-47; *see also id.* at 29 (noting that the trial court found the children credible). According to Father, Mother attempted to cause bodily injury to J.D.K. by chasing him with the electronic device and attempting to enter his room. *Id.* at 18-19, 20-22, 40-43. Father asserts that the recipient of an electric shock would cause pain and impairment and limit the body from functioning normally. *Id.* at 46. Father also maintains that an electronic device, which is considered an offensive weapon under 18 Pa.C.S. § 908(c), would place a person in reasonable fear of serious bodily injury. *Id.* at 45, 47-49. Father further notes that Mother previously hit J.D.K. with a belt, slapped him in the face, grabbed him by the face, and threw a lighter at him, evidencing a course of conduct of abuse, which placed him in reasonable fear of bodily injury. *Id.* at 23-24, 30-31, 49.

Father claims that the trial court's justification for Mother's behavior is irrelevant in determining abuse, noting the parties could not physically discipline the children pursuant to the custody order. *Id.* at 25. Father argues that although the children indicated they were not fearful of Mother at the hearing, the PFA Act does not require that the fear continue for a lengthy period after the acts, only that the abuse occurred, and reasonable fear had

been caused. *Id.* at 26-27. Father further maintains that he is fearful for his children while they are with Mother. *Id.* at 26-27. Father concludes that it cannot be left to the trial judge's whim to disregard the abuse because he believes the acts are not serious enough to rise to the level of abuse. *Id.* at 43; *see also id.* at 50-51 (stating that the trial court must have found abuse initially because it granted a temporary PFA order and does not provide a basis in the record for reversing itself and denying a final PFA order).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K.*, 237 A.3d at 519 (citation omitted).

The PFA statute defines "abuse," in relevant part, as

one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

\*     \*     \*

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a). The PFA Act does not define bodily injury but instead adopts the definitions set forth in the Crimes Code of "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301; *see also* 23 Pa.C.S.§ 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)."). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301; *see also* 23 Pa.C.S. § 6102(b).

Based upon our standard of review, the relevant law, and the record in this matter, we find no abuse of discretion in the trial court's determination that Father has not established by the preponderance of the evidence that Mother abused the minor children. We find that the record evidence supports the court's conclusion that Mother did not attempt to cause bodily injury to J.D.K. and that neither child was in reasonable fear of imminent serious bodily injury by Mother. Indeed, contrary to Father's contention, the evidence established that Mother did not use the electronic device on J.D.K. or J.L.K., take a substantial step toward causing them bodily injury, or place them in

fear of serious bodily injury. ***See*** 18 Pa.C.S. § 901(a) ("A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."); 23 Pa.C.S. § 6102(b); ***see also Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (noting that "an 'attempt' is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another.") (citation and quotation marks omitted). To the contrary, J.D.K. indicated that he was not afraid of Mother and did not testify that Mother actually attempted to use the electronic device to discipline him.

Furthermore, Father has not established that Mother attempted to cause or inflicted bodily injury when physically disciplining J.D.K., particularly because there is no evidence that Mother took a substantial step toward causing either child bodily injury and J.D.K. testified that Mother never hurt him. ***See*** 18 Pa.C.S. § 901; ***see also Commonwealth v. Cannavo***, 199 A.3d 1282, 1291-92 (Pa. Super. 2018) (noting that the substantial step requirement "concentrat[es] on the acts the defendant has done and does not … focus on the acts remaining to be done before the actual commission of the crime.") (citation omitted). Based upon the foregoing, we cannot find the trial court abused its discretion by concluding that Mother did not attempt to cause J.D.K. bodily injury, where she did not take a substantial step toward impairing J.D.K.'s physical condition or causing him substantial pain. ***See Chronister***

- 10 -

*ex rel. Morrison v. Brenneman*, 742 A.2d 190, 192-93 (Pa. Super. 1999) (reversing entry of PFA order and finding no abuse where father administered corporal punishment to his daughter by striking her buttocks with a belt because father's conduct was solely for discipline and did not result in any bodily impairment or bruising, and there was no evidence father attempted to terrorize daughter or inflict pain);[7] *see generally* 23 Pa.C.S. § 6340(d) (under the Child Protective Services Law ("CPSL"), excluding from the definition of abuse, a parent's right "to use reasonable force on or against their children for the purposes of supervision, control and discipline of their children").[8]  Likewise, Father failed to establish by a preponderance of the evidence that Mother's past acts of physical discipline evidenced a course of conduct placing either child in reasonable fear of bodily injury under the PFA Act.  Significantly, J.D.K. testified that he was not afraid of Mother, and J.L.K. testified that he had a good relationship with Mother.  *See* N.T., 11/17/2023,

_____

[7] Although we note that corporal punishment may warrant the entry of a PFA order against a parent, *see Miller on Behalf of Walker v. Walker*, 665 A.2d 1252, 1258 (Pa. Super. 1995) (affirming entry of PFA order against father who had administered corporal punishment of child where child suffered bodily injuries), the evidence presented in this case does not establish that Mother's corporal punishment caused either child to suffer bodily injury and thus did not satisfy the requirements for the entry of a PFA order.

[8] Notably, the PFA Act specifically incorporates the CPSL's definition of "child abuse" in its definition of "abuse."  *See* 23 Pa.C.S. § 6102(a)(4) ("Physically or sexually abusing minor children including such terms as defined in Chapter 63 (relating to child protective services).").

at 43 (wherein the trial court found the children's testimony to be credible); *see also S.G.*, 233 A.3d at 907.

Accordingly, based upon a careful review of the evidence and the relevant law, we do not find the trial court abused its discretion in determining that Father failed to prove his allegations of abuse by a preponderance of the evidence. *See Kaur*, 259 A.3d at 509. We therefore affirm the trial court's denial of Father's request for a final PFA order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/20/2024