J-A26016-24

2024 PA Super 295

| | | |
|---|---|---|
| LACY SMITH OBO M.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL THOMAS, SR. | : | |
| | : | |
| Appellant | : | No. 570 WDA 2024 |

Appeal from the Order Entered April 11, 2024
In the Court of Common Pleas of Blair County Civil Division at No(s):
2024-GN-674

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

OPINION BY BECK, J.:                    **FILED: December 10, 2024**

Michael Thomas, Sr. ("Thomas") appeals from the order entered by the Blair County Court of Common Pleas ("trial court") granting the petition filed pursuant to the Protection from Abuse ("PFA") Act[1] by Lacy Smith ("Smith") on behalf of her nephew, M.T., Thomas' son.  The order, inter alia, prohibits Thomas from having any contact with M.T. or Smith for a period of two years. On appeal, Thomas argues that the trial court erred in determining what he believed to be corporal punishment of M.T. constituted abuse under the PFA Act.  Because we conclude that the record supports the trial court's finding of abuse, we affirm.

On March 13, 2024, Smith filed a PFA petition on behalf of M.T., who is currently seven years old.  **See** Petition for Protection from Abuse, 3/13/2024.

---

[1]  23 Pa.C.S. §§ 6101, et seq.

Smith alleged that Thomas was both verbally and physically abusing M.T. *See id.* ¶ 8. Specifically, Smith averred that Thomas and M.T. had been staying in her home for a few days because Thomas and M.T. were homeless and that she observed Thomas frequently screaming and using profanity towards M.T. during that time. *See id.* Smith stated that on the night of March 11, 2024, her son had clogged the upstairs toilet and Thomas instructed M.T., who needed to use the bathroom, not to flush the toilet. *Id.*; *see also* N.T., 4/11/2024, at 6-7. Smith alleged that after using the toilet, M.T. flushed it, causing it to overflow and create a mess in the bathroom. *Id.* Smith claimed that Thomas began screaming at M.T. and then grabbed him by the arm and was "beating" and "smacking" him repeatedly. Petition for Protection from Abuse, 3/13/2024, ¶ 8. She alleged that Thomas then threw M.T. on his bed and continued beating him. *Id.* Thomas briefly stopped his conduct, momentarily left the room, and then returned and continued to beat M.T. until Smith told Thomas to stop. *Id.* Smith averred that when she asked M.T. if this was the first time Thomas had done something like this to him, M.T. responded, "No." *Id.*

The trial court granted a temporary PFA order. On April 11, 2024, the trial court held a hearing on the PFA petition. The same day, the trial court granted a final PFA order that prohibited Thomas from having any contact with M.T. or Smith for two years. *See* Trial Court Order, 4/11/2024.

This timely appeal followed. Thomas now presents the following issues

for review:

1. Does a father who is disciplining his child for not following directions concerning an improperly working toilet by spanking his child, without leaving any marks upon the child, give cause for a [PFA order] to issue against him?

2. When a final order in a case has been date stamped [two] days prior to the hearing date. Does it give cause to invalidate any of the [trial court's] findings because [Thomas] had in fact been denied due process?

Thomas's Brief at 4.

For his first issue, Thomas argues that the evidence does not support

the trial court's finding that he abused M.T. *See id.* at 7-11. Thomas

maintains that he only spanked M.T. on the buttocks, that there was no

evidence of bodily injury or bruising, and that a parent is permitted under

Pennsylvania law to administer corporal punishment to their child. *Id.* Thus,

Thomas contends that the trial court erred in granting the PFA order. *See id.*

We review PFA orders pursuant to the following standard:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citations, quotation

marks, and brackets omitted). "[W]e review the evidence of record in the

light most favorable to, and grant all reasonable inferences to, the party that

prevailed before the PFA court." ***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021). "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." ***S.G. v. R.G.***, 233 A.3d 903, 907 (Pa. Super. 2020) (citation, quotation marks, and brackets omitted).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***E.K.***, 237 A.3d at 519 (quotation marks and citation omitted). The PFA Act defines abuse, in pertinent part, as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, [or] serious bodily injury[.]
> >
> > (2) Placing another in reasonable fear of imminent serious bodily injury.
> >
> > \*       \*       \*
> >
> > (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

23 Pa.C.S. § 6102(a)(1)-(2), (4).

The PFA Act does not define bodily injury but instead adopts the definitions set forth in the Crimes Code of "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301; ***see also*** 23 Pa.C.S. § 6102(b)

("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)."). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301; *see also* 23 Pa.C.S. § 6102(b). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a); *see also* 23 Pa.C.S. § 6102(b).

At the hearing on the PFA petition, Smith testified that on the night in question, Thomas had told her that her son had clogged the upstairs toilet. N.T., 4/11/2024, at 6. Smith stated that before she had the opportunity to unclog the toilet, M.T. said that he needed to use the bathroom, and consequently, she told Thomas to have M.T. use the toilet, but not flush it, and then she would unclog it. *Id.* at 6-7. Smith explained that a few moments later, she heard water hitting the floor and Thomas berating M.T. because M.T. had flushed the toilet causing it to overflow. *Id.* at 7. Smith testified that she went upstairs and witnessed the following:

> [Thomas] picked up [M.T.] by his arm and started beating him and just beating him and beating him and beating him and beating him, and then he threw him onto the bed and held him lightly on his back and just continued just beating him and beating him and beating him, and I am in shock because I am like I do not know what in the hell is going on. [Thomas] finally stops, and he goes downstairs. I am in shock because I am like I don't know what to do, and then he comes back up, not even a minute later, [h]e told

- 5 -

> [M.T.] to get on the floor, and whenever [Thomas] got back in the room, … he picked [M.T.] up again and threw him back on the bed and started beating him again, and that is when I stepped in. I was like he has had enough. I said stop. He looked at [M.T.] and he is like get on the floor, and then [Thomas] went over to the steps, went down about two steps, looked back and said don't you think this is over, boy. You are going to get it later tonight. Then he went downstairs. … [M.T.] was crying so I went over to [him], and I picked him up and I was holding him, and that is when I looked over and saw that my son was in the chair in the room while all of that happened. … They were both bawling.

*Id.* at 7-8. When Thomas' counsel asked Smith if what she described was what most people would consider a spanking, she answered "No." *Id.* at 12.

Mackenzie Way ("Way"), Smith's neighbor, also testified at the hearing. Way stated that on the night in question, Thomas entered her home and asked her mother for a cigarette and stated, "I beat my son's fucking ass." *Id.* at 21-22. Way testified that Thomas kept repeating that phrase until she gave him a cigarette. *Id.* at 22.

Thomas testified that he was merely disciplining his son. *See id.* at 16. He stated that he open hand spanked M.T. to discipline him for flushing the toilet when Thomas had told him not to flush it. *Id.* Thomas claimed that he did not throw M.T. on the bed, but rather "grabbed him and put him on the bed" and then "smacked his behind." *Id.* at 17. Thomas, however, did admit that he told Way that he had beat his son but that "beat and discipline is no different." *Id.* at 20.

In support of his claim, Thomas relies on *Ferri v. Ferri*, 854 A.2d 600 (Pa. Super. 2004), in which this Court reversed the trial court's entry of a PFA

- 6 -

order where the record revealed the defendant slapped her daughter in the face one time, and the slap did not cause any bruising. *Id.* at 602. In determining whether the slap constituted abuse under the PFA Act, this Court stated that "[w]e do not believe that a finding the child received a hard slap leads inexorably to the conclusion that she **therefore** suffered an injury." *Id.* at 603 (emphasis in original). Additionally, we noted that the daughter suffered no bruising, an eyewitness testified that the daughter was not crying after the slap, and that the PFA Act "does not outlaw corporal punishment by a parent." *Id.* at 603-604.

Thomas also relies on *Chronister v. Brenneman*, 742 A.2d 190 (Pa. Super. 1999). In that case, this Court reversed the trial court's entry of a PFA order where the defendant hit his daughter four or five times on the buttocks with a folded belt. *Id.* at 191. We reasoned that there was a lack of evidence indicating that the defendant's acts "were intended to be anything other than punishment for a young woman who the trial court admit[ed had] taxed her father's patience to the limit," and that there was likewise "no evidence that it was a malevolent infliction of pain or an attempt to terrorize his daughter[.]" *Id*. at 192.

We find the case at bar distinguishable from both *Ferri* and *Chronister*. Here, the record, viewed in the light most favorable to Smith as the prevailing party, reflects that Thomas grabbed M.T. and repeatedly beat him, then threw him on a bed where he continued to beat him. N.T., 4/11/2024, at 7-8.

Thomas left the room for a minute or two, following which he returned, threw M.T. back on the bed, and then continued beating him. *Id.* After Smith interjected, Thomas taunted M.T., who was at that point "bawling," telling him as he was walking away "don't you think this is over, boy. You are going to get it later tonight." *Id.* Thomas then admitted to Smith's neighbor that he had just "beat my son's fucking ass." *Id.* at 21-22. Thus, Thomas' actions went beyond those of the defendants in *Ferri* and *Chronister*. *See Ferri*, 854 A.2d at 603-04; *see also Chronister*, 742 A.2d at 191-93.

Although Thomas is correct in his claim that there is no evidence in this case that M.T. sustained actual injury, "a person need not suffer actual injury to be considered a victim of abuse[.]" *Ferri*, 854 A.2d at 603-04. The record reflects that Thomas repeatedly, severely, and malevolently struck M.T., only stopping because Smith interjected to protect the child. Thus, the record supports a finding that Thomas attempted to cause M.T. bodily injury. *See* 18 Pa.C.S. § 901; *see also Commonwealth v. Cannavo*, 199 A.3d 1282, 1291-92 (Pa. Super. 2018) (noting that the substantial step requirement "concentrat[es] on the acts the defendant has done and does not ... focus on the acts remaining to be done before the actual commission of the crime") (citation omitted). Accordingly, we conclude that the trial court did not abuse its discretion in determining that Smith proved the allegations of abuse by a preponderance of the evidence and that the trial court did not err in granting the PFA order.

For his second issue, Thomas argues that he was denied due process because the order granting the final PFA order was date stamped for April 9, 2014, two days before the hearing on the PFA petition. Thomas' Brief at 11-12. Thomas therefore asserts the trial court improperly reached its decision to grant the PFA order prior to the hearing on the PFA petition. *Id.*

The certified record reveals that the order granting the final PFA order was date stamped on April 11, 2024, and that it was docketed on that date. *See* Trial Court Order, 4/11/2024. We have no explanation as to why the order Thomas received was date stamped for April 9, 2024, when the order in the record was date stamped and docketed on April 11, 2024, nor does Thomas offer any explanation as to why this occurred. Moreover, Thomas fails to cite any authority in support of this claim or otherwise indicate how the date discrepancy between the docketed order and the order he received denied him of due process.[2] Nonetheless, we emphasize that it has long been the rule that "[t]his Court may review and consider only items which have been duly certified in the record on appeal." *Rosselli v. Rosselli*, 750 A.2d 355, 359 (Pa. Super. 2000). The record therefore does not support Thomas' assertion that the trial court reached its decision to grant the PFA order prior

_____

[2] Arguably, Thomas waived this issue because he has failed to develop this claim with meaningful argument or citation to authority. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (stating that "[i]t is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal"); *see also* Pa.R.A.P. 2119(b).

to the hearing on the matter.  Accordingly, this claim does not entitle Thomas to relief.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/10/2024