J-S45001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW FIALKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIDGETE CARRELLI | : | |
| | : | |
| Appellant | : | No. 995 MDA 2023 |

Appeal from the Order Entered June 30, 2023
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  23-FC-40703

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: FEBRUARY 21, 2024**

Bridgete Carrelli ("Mother") appeals from the final protection from abuse ("PFA") order entered in favor of Matthew Fialkowski ("Father") and the parties' eight-year-old child, J.F.  We affirm and grant the petition to withdraw filed by Joseph V. Sebelin, Jr., Esquire, Mother's privately retained counsel.

Mother and Father never married.  Their relationship ended while Mother was three months pregnant with J.F.  She subsequently married Matthew Mullen, with whom she has two children who are not subject to the PFA order or involved in this appeal.  Since the child's birth, Mother has maintained primary custody of J.F., either informally or pursuant to a 2021 custody order entered in Carbon County.  Prior to the events that gave rise to the PFA order, J.F. resided with Mother, Mr. Mullen and J.F.'s two younger half-sisters in

_____

[*] Former Justice specially assigned to the Superior Court.

Jim Thorpe, Pennsylvania. Father exercised periods of weekend custody at his home in Lackawanna County, Pennsylvania. The couple shared legal custody.

On the evening of May 4, 2023, Mother left J.F. and two younger half-siblings unattended at the family residence for one hour and seventeen minutes while she walked down the street to retrieve money from an automobile that was parked approximately ninety feet from the residence. Upon her return to the residence, Mother admonished J.F. for calling Father during her absence, and an argument ensued. The altercation escalated to the point where J.F. threw the telephone at her. Mother responded by spanking J.F. and demanding that J.F. remove his clothes and leave the residence. During the evidentiary hearing she further explained,

> I was like, "You know what, if this is how you're going to treat me, you're going to disrespect me, you're going to throw things at me, I'm done with you too." . . . I was like, "if this is how you're going to treat the only person who does everything for you, you can get out of my house too." And I was like, "if those clothes you are wearing, . . . if I bought you those clothes, you're to take them off and you can get out too."

N.T., 6/12/23, at 26-27.[1] Mother denied striking her son and estimated that J.F. was outside for approximately five minutes before she brought him inside, apologized, and comforted him. *Id*. at 27.

_____

[1] While Mother, Father, and J.F. all testified during the hearing, the trial court subsequently sealed the child's testimony. *See* Order, 9/27/23. Insofar as Mother's reproduced record includes the unredacted transcript, we strike the sealed testimony from that document.

During Father's next scheduled period of physical custody, J.F. told Father that he was terrified to return to Mother's home and informed Father about the ordeal, including being stripped, struck, and sent out of the house. *Id*. at 3-4, 6-7. Thereafter, Father contacted local authorities, including the local child service agency, and refused to return J.F. to Mother's custody due to his concern for his son's safety.[2] *Id*. at 7. He informed Mother that he was not relinquishing custody of J.F. until he was directed by a judge or the police. *Id*. at 19. In response, Mother barraged Father with telephone calls, text messages, and post on social media. *Id*. at 15. Father testified that Mother spoofed his girlfriend's telephone number and when he answered the telephone call, she threatened, "I'm gonna fucking kill you. Give me my son back." *Id*. Father stated that he contacted the local police department but he did not indicate whether the threat was investigated. *Id*. Mother admitted "calling and texting [but] getting no response." *Id*. at 19. She stated, "I did call him multiple times, frantically, wondering what was going on[.]" *Id*. However, she denied making any threats to kill him. *Id*. at 22.

On June 1, 2023, Father filed in Lackawanna County a PFA petition against Mother seeking protection for himself and J.F. The trial court granted a temporary PFA order, and following an evidentiary hearing on June 12, 2023, where Mother, Father, and J.F. testified, the trial court issued a final PFA order

---

[2] The certified record does not reveal whether the child service agency pursued the matter beyond interviewing Mother and investigating her home. N.T., 6/12/23, at 32. Nevertheless, the record bears out that the agency did not remove the younger children from the home. *Id*.

that expires in June 2024. Although the trial court did not specify the subsection upon which it based its finding of abuse, it found that Father presented sufficient credible evidence to establish abuse under the PFA Act. *See* PFA Order, 6/12/23, at 1; Trial Court Opinion, 8/9/23, at 3-4. The court awarded Father temporary primary physical custody of J.F. and granted Mother periods of visitation with her son. The order permitted physical contact but prohibited Mother from striking the child. The court also encouraged J.F. to maintain telephone contact with Mother. As to the provisional nature of the court's custody award, the PFA order read, "The custody provisions of . . . this order are temporary. Either party may initiate custody proceedings pursuant to the custody statute at 23 Pa.C.S. § 5321-5340. Any valid custody order entered after the final Protection From Abuse order supersedes the custody provisions of this order." PFA Order, 6/12/23, at 2.

This timely appeal followed. Mother complied with Pa.R.A.P. 1925(a)(2)(ii), and presented three issues for our review:

A. Whether the trial court committed an abuse of discretion and/or error of law by granting [Father's] request for a PFA on his behalf and on the child's behalf against [Mother]?

B. Whether, in the alternative, the trial court committed an abuse of discretion and or error of law . . . by entering a PFA order in regard to the child and against [Mother] . . . where the trial court failed to apply the parental privilege found in 23 Pa.C.S.A. § 6304(c) and 23 Pa.C.S.A. § 6304(d), the parental privilege found in 18 Pa.C.S.A. § 509, and failed to follow the holding of *Chronister v. Brenneman*, 742 A.2d 190 (Pa. Super. 1999) and the authority therein set forth.

C.    Whether the trial court committed an abuse of discretion and or error of law by . . .granting the protection from abuse petition against [Mother] and failing to apply the custody factors set forth in 23 Pa.C.S.A. § 5328 as well as the relocation factors of 23 Pa.C.S.A. § 5337, and in particular failing to consider [Mother's] longstanding status as the primary custodian, failing to consider that by awarding custody to [Father] constituted a relocation, ignoring that the order will necessitate a change in the child's school district, disregarding [Father's] extensive and serious criminal record, etc., such that the PFA order directed [Father] to have primary custody, all of which is not in the best interests of the child?

Mother's brief at 7 (cleaned up).  Father did not file a brief in this matter.

We begin with a review of the applicable law.  As this Court has observed: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (cleaned up).  To obtain a final PFA order, the petitioner must establish abuse by a preponderance of the evidence, that is, "the greater weight of the evidence, *i.e.*, enough to tip a scale slightly." *Id*. (cleaned up).  Notably, the intent of the alleged abuser is not relevant to our determination. *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1263 (Pa.Super. 2008).

Mother's first issue implicates the court's finding by a preponderance of the evidence that the PFA was warranted in this case.  First, as to Father, Mother contends that her interactions with Father were not tantamount to abuse, threat of abuse, or a pattern of abusive conduct. Mother's brief at 20-23.  In this same vein, Mother argues that the evidence was insufficient to support the PFA order and that her physical contact with J.F. was acceptable

- 5 -

corporal punishment under her parental privilege rather than any form of physical abuse. *Id*. at 23-25. We address these issues seriatim.

When the respondent in a PFA petition challenges the sufficiency of the evidence to sustain the PFA order, we view the evidence admitted in the light most favorable to the petitioner, "granting [him] the benefit of all reasonable inferences[.]" *Id*. at 19 (cleaned up). Since trial courts observe the witnesses firsthand, we defer to their credibility assessments. *Id*. Indeed, "[t]he petitioner's testimony is sufficient if it is believed by the trial court." *Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa.Super. 2007) (*en banc*). Finally, we "do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa.Super. 2022) (cleaned up).

Regarding the specific elements that had to be proven by a preponderance of the evidence in this case, the PFA Act defines "abuse" as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102.

Sitting *en banc*, this Court has further explained that the "purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **Custer**, 933 A.2d at 1054. Thus, the PFA Act does not require actual physical harm before issuing a PFA order. **See E.K.**, 237 A.3d at 522 (noting that "[b]ecause the goal of the PFA Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the PFA Act to apply"). Since there is a multitude of ways to convey a threat of physical harm, a showing of "'reasonable fear' is sufficient." **S.W. v. S.F.**, 196 A.3d 224, 231 (Pa.Super. 2018) (quoting 23 Pa.C.S. § 6102).

As to the PFA order protecting Father, Mother initially asserts that there is no evidence of abuse or threat of abuse beyond Father's "speculation, conjecture, and inuendo." Mother's brief at 20. Then, apparently acknowledging the unassailable fact that Father testified that Mother had threatened to kill him, she asserts that the threat alone is insufficient to warrant a PFA order without additional evidence of intent, such as past conduct, or evidence that Father expressed concern for his safety. Thus, she concludes that, absent corroborating evidence, the reasonable inference is that Mother did not commit the acts alleged. *Id*. at 22. In sum, Mother opines, "To conclude otherwise, encourages a party to engage in gamesmanship in a custody scenario, incite the other into uttering 'special words,' and then capitalize upon it by filing a PFA. This honorable court should not condone such conduct." *Id*. at 22-23. For the following reasons, Mother's arguments are unconvincing.

First, notwithstanding Mother's assertions, the alleged abuser's intent is irrelevant to our determination. *See Buchhalter*, 959 A.2d at 1263. Further, as it relates to Mother's threat to kill Father, this Court addressed a similar issue in *Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 209 (Pa.Super. 2002), and confirmed that a telephone threat may be sufficient to warrant a PFA order. We explained, "[i]t is possible for a person to be placed in reasonable fear of imminent bodily injury based on telephone calls, particularly when coupled with the alleged abuser's past history of violence."

*See also*, *McCance v. McCance*, 908 A.2d 905 (Pa.Super. 2006) (evidence was sufficient where respondent with noted anger issues, and a history of altercations with other individuals, stood in front petitioner's car blocking her egress while yelling obscenities and verbal); *D.H. v. B.O.*, 734 A.2d 409, 412 (Pa.Super.1999) (assuming that telephone calls may form the basis of PFA, but reversing PFA order because the alleged abuser did not make physical threats).

Instantly, Father not only testified about the threats that Mother leveled against him but also testified that he previously filed a prior PFA order against Mother in Monroe County, which resulted in a temporary PFA order. N.T., 6/12/23, at 4, 35. The trial court found Father's testimony to be credible and, through her counsel, Mother conceded the temporary PFA order that was previously entered against Mother in Monroe County. *See* Trial Court Opinion, 8/9/23, at 3; N.T., 6/12/23, at 35. Thus, in contrast to Mother's assertions, the certified record, in fact, includes credible evidence of not only Mother's threat to kill Father but also corroborating evidence of her past conduct which resulted in a Monroe County court entering a temporary PFA order against her. Insofar as the trial court relied upon Mother's threat coupled with evidence of past allegations of abuse to find that Father established abuse by a preponderance of the evidence, we discern neither an abuse of discretion nor error of law. *See Burke ex rel. Burke*, 814 A.2d at 209.

As to the portion of the PFA order relating to J.F., the trial court explained that it found Mother lacked credibility concerning whether she struck J.F. as part of her outburst that culminated in the child being stripped and forced from the home. Trial Court Opinion, 8/9/23, at 4. In contrast, it accepted as credible Father's testimony that J.F. reported Mother striking the child prior to excluding him from the residence. *Id*. "Additionally, [the c]ourt found [Father's] testimony credible in stating [that J.F.] reported to be terrified to return to [Mother's] residence." *Id*.

In assailing the trial court's decision, Mother asserts, "The record in this matter contains no evidence to support the [c]hild's PFA against . . . Mother." Mother's brief at 23. Specifically, she contends that Father failed to present evidence that Mother struck J.F. and, apparently ignoring the trial court order sealing the child's testimony, she argues that J.F. "*never* testified that Mother had spanked him." *Id*. (emphasis in original). In this vein, she posits, "Inexplicably, and in direct opposition to [the testimony of Mother and J.F.], the trial court concluded that Appellant Mother spanked the [c]hild. There is no testimonial basis which supports this conclusion." *Id*. at 23-24 (incomplete citation to Trial Court Opinion omitted).

The certified record belies Mother's protestations. First, as outlined *supra*, Father testified that he initiated the PFA proceedings after J.F. explained to him how Mother "came home, made him strip naked, spanked him, [and] sent him out into the street." N.T., 6/12/23, at 4. While Mother

objected to this testimony as violating the rule against hearsay, the trial court did not rule on the objection or strike the testimony. *Id*. On appeal, without citation to relevant authority, Mother states, "this honorable court has the authority to rule on these objections and find them inadmissible." Mother's brief at 24. However, mindful of our standard of review of a claim that the evidence **presented** was insufficient to support the verdict, we reject Mother's invitation to rule on her evidentiary objection in the first instance as a concomitant component of her sufficiency claim. *See Arias*, 286 A.3d at 350 (this Court will not review sufficiency claims on a diminished record).

Furthermore, to the extent that Mother attempts to assert a separate claim of trial court error based on its evidentiary decision, she was required to include that claim in the Rule 1925(b) statement that she filed simultaneously with the notice of appeal. As she failed to preserve this issue in the Rule 1925(b) statement, it is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Thus, based upon a careful review of the evidence included in the certified record and the relevant law, we do not disturb the trial court's determination that Father proved his allegations of abuse by a preponderance of the evidence.

Next, Mother asserts that the trial court erred in failing to apply the parental privileges addressed in the Child Protective Services Law, 23 Pa.C.S.

§§ 6301-6388 ("CPSL"), and § 509 of the Pennsylvania Crimes Code, all of which we outline below. Overall, Mother argues that to the extent that she spanked J.F., she was entitled to use corporal punishment to discipline the child for his deviant behavior. For the following reasons, we disagree.

At the outset, we observe that this issue regarding Mother's use of permissible corporal punishment is waived because she did not assert it during the PFA hearing. Indeed, rather than lay a foundation for justification, Mother specifically denied spanking her son before ejecting him from the home without clothes. N.T., 6/12/23, at 26 (mother testifying, "I did not put my hands on any child"). As this novel argument concerning the "parental privilege" was not presented to the trial court, it is waived. **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, even if Mother had raised the claim in the trial court, it would fail on the merits.

Section 6304 of the CPSL excludes from the definition of "child abuse" the use of reasonable force in the following situations:[3]

_____

[3] We note that the PFA Act specifically incorporates the CPSL's definition of "child abuse" in its enumerated definition of "abuse." **See e.g.**, 23 Pa.C.S. § 6102(a) ("(4) Physically or sexually abusing minor children including such terms as defined in Chapter 63 (relating to child protective services))." However, "for a remedy to be available under the Protection from Abuse Act, it is not necessary that the physical harm to the child be as serious as that which is required for a child to be removed from his home and placed in protective custody." **Miller on Behalf of Walker v. Walker**, 665 A.2d 1252
*(Footnote Continued Next Page)*

[T]he use of reasonable force on or against a child by the child's own parent or person responsible for the child's welfare shall not be considered child abuse if any of the following conditions apply:

(1) The use of reasonable force constitutes incidental, minor or reasonable physical contact with the child or other actions that are designed to maintain order and control.

(2) The use of reasonable force is necessary:

  (i) to quell a disturbance or remove the child from the scene of a disturbance that threatens physical injury to persons or damage to property;

  (ii) to prevent the child from self-inflicted physical harm;

  (iii) for self-defense or the defense of another individual; or

  (iv) to obtain possession of weapons or other dangerous objects or controlled substances or paraphernalia that are on the child or within the control of the child.

23 Pa.C.S. § 6304(c).

Similarly, the CPSL specifically excludes from the definition of abuse, "reasonable force on or against their children for the purposes of supervision, control and discipline of their children." 23 Pa.C.S. § 6304(d).

Finally, the Pennsylvania Crime Code permits the justifiable use of force if:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

---

(Pa.Super. 1995); *Spivey v. Benjamin*, 2023 WL 4742381 (Pa.Super. 2023) (non-precedential decision at *5).

> (i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and
>
> (ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.C.S. § 509(1).

With these principles in mind, we address Mother's argument that the trial court erred in failing to consider that Mother's corporal punishment of J.F. was non-abusive behavior that was protected by the relevant sections of the PFA, CPSL, and the crimes code. Mother's brief at 31-32.

Mother's position is founded upon our holding in **Chronister v. Brenneman**, 742 A.2d 190 (Pa.Super. 1999), which examined the foregoing statutory framework to distinguish abuse from discipline. In that case, a father administered corporal punishment to his sixteen-year-old daughter by striking her across the buttocks with a belt. The trial court entered a PFA order against the father, and this Court reversed. We held that because the father's conduct related solely to discipline and did not result in any degree of bodily impairment, it did not constitute abuse. **Id**. at 192-93. It reasoned, "There is no evidence that it was a malevolent infliction of pain or an attempt to terrorize his daughter, nor did the trial court conclude to the contrary." **Id**. at 192.

In rejecting Mother's argument, the trial court reasoned as follows:

> [T]his Court found [Father's] testimony credible in that [Mother] hit the minor child. It is clear from the record and the unconverted testimony [Mother] attempted to terrorize the minor child by instructing the minor child to leave the residence naked. While this Court recognizes a parent's statutory right to use corporal punishment for supervision, control and discipline of their children, the totality of the circumstances for which [Mother] hit the minor child dictates she intended to inflict pain and terrorize the minor child. [Mother] far exceeded her parental privileges when hitting the minor child and having the minor child leave the residence naked for a period of five minutes.

Trial Court Opinion, 8/9/23, at 6 (cleaned up).

Again, we find neither legal error nor an abuse of discretion in the trial court's determination. Corporal punishment is not the blanket justification that Mother suggests, and when administered in anger, it may in fact, warrant a PFA. *Miller*, 665 A.2d at 1258. In contrast to the dearth of evidence that this Court found regarding the parent's attempt to terrorize his child in *Chronister*, the trial court in the case *sub judice* made a specific finding that J.F. was terrified to return to Mother's home and the aggregation of Mother's acts committed against her son amounted to a finding of abuse under the PFA Act. Considering Mother's noted anger at J.F. for throwing the telephone, her fundamental denial of using any form of physical discipline, and Father's testimony regarding his son being terrified to return to Mother's home, we defer to the trial court's credibility determination and conclude that Mother's actions met the definition of abuse set forth at 23 Pa.C.S. § 6102(a). *See id*. (rejecting father's assertion of permissible corporal punishment where father spanked child with a board).

Mother's last argument relates to the temporary award of physical custody. Specifically, while acknowledging that the trial court need only consider the risk that Mother posed to J.F., she simultaneously argues that the trial court erred in failing to consider the best-interest factors outlined in Section 5328(a) of the child Custody Law. Mother's brief at 35 ("the case at bar illustrates the fatal error of neglecting the best interests' analysis."). Mother's claim fails for at least two reasons.

Principally, Mother once more finds her issue waived pursuant to Rule 302(a) because she failed to assert it in the trial court. Second, even if we addressed the merits of this contention, it would not warrant relief.

Simply stated, the trial court is empowered by § 6108(a)(4) to award temporary custody with regard to minor children in granting relief under the PFA. *See* ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1281 (Pa.Super. 2019) ("Absent guidance from our Legislature or our Supreme Court, we conclude that a PFA court need not conduct a best interests custody analysis to award ***temporary*** custody as form of relief under section 6108 of the Protection From Abuse Act.") (emphasis in original). As we explained,

> The purpose of the Protection From Abuse Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring. It is well-settled that trial courts have the authority to enter protection from abuse orders that conflict with custody orders. The PFA Act allows the court to award temporary custody or establish temporary visitation rights with regard to minor children. *See* 23 Pa.C.S.A. § 6108(a)(4). . . .

Custody wise, a PFA order is not designed to impose anything but emergency relief. To understand this, look no further than the PFA Act: "Nothing in this paragraph relating to temporary custody as a form of relief shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure." **See** § 6108(a)(4)(v). But while the domestic violence emergency is still pending, a PFA order may alter a pre-existing custody order and remand for clarification to avoid conflict. **See Dye for McCoy** [**v. McCoy**, 621 A.2d 144, 145 (1993 Pa.Super)]. "To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic violence." **Id**.

**Id**. (select citations omitted) (cleaned up).

Instantly, Mother presented evidence that outlined ongoing custody litigation in Carbon County and identified the pending petition for contempt that Mother filed against Father for retaining custody of J.F. in contravention of the extant custody order. N.T., 6/12/23, at 5-6, 9, 16, 19-20. That petition sought sole physical custody and a limitation of Father's interaction with his son to supervised visitation. **Id**. at 6. The custody court will undoubtedly have to perform a complete best-interest analysis in ruling on Mother's petition. Thus, insofar as the PFA order is not the final determination of the parties' custodial rights, the trial court did not err or abuse its discretion in awarding Father temporary physical custody pending the finalization of the custody proceeding in Carbon County. Accordingly, Mother's claim of error warrants no relief.

Finally, we address the petition for relief that Joseph V. Sebelin, Jr., Esquire, filed in this Court and served upon Mother and Father seeking to

withdraw from representation of Mother in this matter pursuant to Pa.R.C.P. 1012(c), due to an "irrevocable breakdown in the attorney-client relationship." Petition to Withdraw as Counsel, 12/15/23, unnumbered at 2. Counsel's verified petition highlighted that upon filing Mother's brief and Reproduced Record in this Court, Mother refused to pay her legal fees. *Id*. In addition, Mother "telephoned the office and acted in a rude, obnoxious, and unkind manner,[and] posted a false and defamatory review" about Attorney Sebelin on social media. *Id*. Mother did not respond to the petition.

Although the PFA Act requires the court to advise a respondent, such as Mother, that she has the right to legal representation, it does not create a statutory right to court–appointed counsel. *See* 23 Pa.C.S. § 6107(a); *Varner v. Holley*, 854 A.2d 520, 523 (Pa.Super. 2004) ("a PFA action is not the type of proceeding which involves the deprivation of a constitutional right so as to require the appointment of counsel."); *Davis v. Davis*, 2021 WL 4281300, **3 (Pa.Super. 2021) (non-precedential decision) (quoting *Weir v. Weir*, 631 A.2d 650, 657 (Pa.Super. 1993) ("The right to be represented by counsel cannot be equated with the right to receive court-appointed counsel.")). As Mother has no statutory or constitutional-based right to appointed counsel, we review Attorney Sebelin's petition in accordance with the rules of appellate and civil procedure.

Pennsylvania Rule of Appellate Procedure 102, regarding the definition of counsel of record, states, in pertinent part, that counsel may withdraw when

"an application for withdrawal is granted by the appellate court." Pa.R.A.P. 102. While the Appellate Rules do not set forth the requirements of the application for withdrawal from representation in this Court, Pa.R.Civ.P. 1012(c) provides the following notice requirements when the location of the client is known:

> (d)(1) If the whereabouts of the party on whose behalf the appearance was entered are known, the attorney shall
>
>> (i) set forth the address of that party in the petition.
>>
>> (ii) serve notice of the petition on the party in the manner provided by Rule 440.
>>
>> (iii) file a certificate of service of the notice with the petition, and
>>
>> (iv) immediately notify the party by ordinary mail of the entry of an order granting leave to withdraw. The notice shall include a copy of the order.

Pa.R.Civ.P. 1012(d)(1).

Pursuant to the Pennsylvania Rules of Professional Conduct 1.16, a lawyer may withdraw where the client has rendered representation unreasonably difficult or refused to fulfill an obligation to pay for the lawyer's services. *See* Pa.R.P.C. 1.16 (b)(5) and (6); *see also id*. at Explanatory Comment, *Optional Withdrawal* [8] ("A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.").

Our review of the record in this matter confirms that Attorney Sebelin complied substantially with the requirements of Pa.R.C.P. 1012(d)[4] and set forth two acceptable bases to withdraw, *i.e.*, (1) a break down in the attorney-client relationship; and (2) Mother's refusal to satisfy her financial obligation for the services that Attorney Sebelin rendered in this matter. Accordingly, we grant the petition to withdraw.

Based upon our review of the certified record and the relevant law, we hold that Father established the allegations of abuse by a preponderance of the evidence. Accordingly, we affirm the order granting PFA relief to Father and J.F. for one year.

Petition to withdraw filed by Joseph V. Sebelin, Jr., Esquire, is granted. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/21/2024

---

[4] Although Mother's address is not set forth in the petition as required by Rule 1012(d)(1)(i), Attorney Sebelin listed her address on the certificate of service that he filed with the petition.