J-S44043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALEXIS GOODALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY GROSE | : | |
| | : | |
| Appellant | : | No. 1293 EDA 2025 |

Appeal from the Order Entered May 19, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  2505V7848

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED MARCH 18, 2026**

Bradley Grose ("Grose") appeals *pro se* from the order granting a final one-year protection from abuse ("PFA") order against him.  Because Grose's numerous, unsupported, and often intemperately phrased claims that the trial court erred in finding abuse under 23 Pa.C.S.A. § 6102, relied on inadmissible evidence, mischaracterized the evidence, and showed bias against him are waived and/or meritless, we affirm.

The trial court summarized the factual history of this appeal as follows:

[Grose] and [Alexis Goodall ("Goodall")] are both adult individuals living in Philadelphia, Pennsylvania.  The parties were involved in a romantic relationship that ended approximately six years ago. The parties are the parents of [a] six-year-old son[].  Pursuant to a custody order issued by Delaware County, Pennsylvania[ court,] [Goodall] has primary physical custody and [Grose] has partial physical custody.  The parties' typical practice for custodial exchange[s] is that [Grose] will either pick the child up and drop off at school or [Goodall] does drop offs and pick ups at paternal grandparent's residence.

> The actions giving rise to [Goodall's] filing of the PFA petition were that [Grose] was continuing to show up at her home unexpectedly, the most recent of which time occurred on May 10, 2025. [Grose] would peer into the windows on the side and back of her home and would attempt to let himself into the home by turning the doorknob. . . .

Trial Court Opinion, 7/22/25, at 1-2.

On May 12, 2025, Goodall filed a PFA petition, and a temporary order issued. Four days later, Grose filed a motion to dismiss, in which he denied Goodall's allegations of abuse and claimed, *inter alia*, he had never been the subject of a complaint, police report, or arrest for domestic violence. The trial court consolidated the motion to dismiss with the PFA petition for a hearing on May 19, 2025.

Goodall and Grose both appeared at the hearing without counsel. At the beginning of the hearing, the trial court denied Grose's motion to dismiss, noting that all allegations—including those in Goodall's petition and Grose's motion to dismiss—needed to be established by evidence. **See** N.T., 5/19/25, at 5. The court emphasized that Goodall had the initial burden of proof to obtain a final PFA order. **See id**. at 8.

Goodall testified that there had been "plenty of times over the years that [Grose] has popped up at [her] residence, banging on her windows, turning the doorknob as if he's trying to get in, [and] yelling outside." **Id**. at 9. Goodall played three videos on her phone, which the trial court described as follows:

> . . . In the first video, [Grose] is looking right at the camera while he is wielding . . . a sword of some kind. The [c]ourt cannot determine whether it is real or not. It looks real. The next one is

- 2 -

[Grose] . . . on [what] looks like a deck dressed in a white shirt. . . .

The third one, [Grose] was on the deck dressed in a grey shirt.

*Id*. at 13-14. Goodall continued that Grose "just pops up random[ly,] he never knocks on the door[, h]e's always at the window[,]" and he scares her each time. *Id*. at 14-15. Goodall testified about her anxiety about Grose "pop[ping] up on [her] at any time," and she explained:

He also has a very like aggressive demeanor and manner in the way he conversates with me in general. He texts. And I have . . . evidence of the type of language that he uses, even when we're trying to communicate about the child.

I have another police report here where he came to another location that I lived at . . .. I have voice notes of just the tone of voice and his demeanor. And it's very harassing. It's been going on for years.

. . . Prior to us having a six[-]year-old son, we used to get in physical altercations. He would hit me with a closed fist.

He's choked me out on the floor of his mother's home before. I believe I was pregnant one of that -- those times too as well. So that's what is very alarming when it comes to him popping up at my windows whenever he feels like.

Also, with the fact that he speaks so aggressive[ly] and disrespect[fully], consistently throughout the time of even just trying to co-parent with him.

*Id*. at 15-16.

On cross-examination by Grose, Goodall conceded the "sword," which the court had referred to in its summary of the first video, was their son's plastic toy that had been left outside. *See id*. at 33. Grose also attempted to have Goodall point to a police report in which she alleged he physically harmed or "did something to her." When the trial court asked if Grose wanted

the court to review all of the reports Goodall had with her, Grose responded, "Yes," and he further acknowledged, without objection, that if the court were to review the reports, it would review the reports in their entirety. *Id*. at 40-41. However, after the court read aloud the portions of those reports indicating that police warned Grose about not appearing for custody exchanges unannounced, Grose insisted the trial court should only consider the police reports for the fact that they contained no allegations he physically harmed Goodall. *See id*. at 42-45.

At the conclusion of the hearing, Grose maintained: he only went to Goodall's home for custody exchanges; there was a Delaware County custody order now in place; and Goodall was using the PFA proceeding to interfere with his custody of their child. *See id*. at 74-77. As the trial court rendered its findings and concluded the hearing, Grose repeatedly questioned whether he would get the child and how. *See id*. at 79. The court stated that the hearing was concluded and that Grose was excused. A court officer told Grose his questions involved custody matters, asked Grose to exit the courtroom, and then asked Goodall to do the same. *Id*. at 80.

The trial court issued the final PFA order against Grose, and Grose timely appealed.[1] Both Grose and the trial court complied with Pa.R.A.P. 1925.

Grose raises the following issues for review:

_____

[1] The trial court did not formally enter the order onto the docket but did so after Grose took his appeal.

- 4 -

1. Did the trial court err by failing to identify any act of "abuse" under 23 Pa.C.S.[A.] § 6102(a)?

2. Did the trial court enable retaliatory abuse of process by [Goodall], contrary to Pennsylvania statutes and constitutional rights?

3. Did the trial court mischaracterize video evidence by describing a toy sword as a "machete" to fabricate abuse?

4. Did the trial court engage in fraud on the court by falsifying the record regarding video evidence?

5. Did the trial court err by admitting irrelevant, dismissed police reports in violation of Pa.R.E. 401-403 and [Grose's] due process rights?

6. Did the trial court apply selective evidentiary standards, admitting [Goodall]'s dismissed reports but excluding [Grose's] custody order?

7. Did the trial court improperly interfere with an existing Delaware County custody order in violation of 23 Pa.C.S.[A.] § 6108(a)(4)?

8. Did the trial court abuse its discretion by refusing to hear [Grose's] motion to dismiss?

9. Did the trial court exhibit bias and make inflammatory commentary against [Grose] as a *pro se* litigant?

10. Did the trial court violate due process by ejecting [Grose] from the courtroom and concealing proceedings from the record?

Grose's Brief at 5-6 (reordered; some capitalization omitted).

Preliminarily, we reiterate that appellate briefs must conform materially to the requirements of the Pennsylvania Rules of Appellate Procedure, and if the defects in the brief are substantial, this Court may dismiss an appeal or find issues waived. **See** Pa.R.A.P. 2101 (providing that "if the defects . . . in the brief . . . are substantial, the appeal ... may be ... dismissed"); **see also**

***Gould v. Wagner***, 316 A.3d 634, 639 (Pa. Super. 2024) (noting that "[i]f a deficient brief hinders this Court's ability to address any issue on review, the issue will be regarded as waived"). Although this Court liberally construes a *pro se* litigant's filings, he must comply with the requisite procedural rules, and we will not act as counsel and develop arguments on his behalf. ***See Elliot-Greenleaf, P.C. v. Rothstein***, 255 A.3d 539, 542 (Pa. Super. 2021); ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014).

A review of Grose's *pro se* brief shows that he supports his ten issues with short, conclusory, and intemperate discussions without citation to, or analysis of, the relevant law. ***See*** Pa.R.A.P. 2119(a). Although Grose's brief borders on being so substantially defective that we could dismiss this appeal, we will address his issues to the extent they are preserved and appropriately developed.

In his first issue, Grose challenges the sufficiency of the evidence presented at the PFA hearing. Our standard of review is as follows: we review the trial court's legal conclusions for an error of law or an abuse of discretion. ***See Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008). We must view the evidence of record in the light most favorable to the prevailing party. ***See Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021). On appeal, this Court defers to the trial court's credibility determinations. ***See id***.

A PFA petitioner must establish that "abuse" occurred by a preponderance of the evidence. ***See E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020). Relevantly, the statute defines "abuse" as including

"[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury."  **See** 23 Pa.C.S.A. § 6102(a)(5).

Grose appears to assert that the trial court erred in finding abuse based on past acts alone.  **See** Grose's Brief at 14-15 (citing **R.G. v. T.D.**, 672 A.2d 341 (Pa. Super. 1996) with a parenthetical explanation that "past incidents alone, without evidence of present threat or imminent harm, are insufficient to support a PFA"); **see also id**. at 18.[2]  He also contends the trial court impeded meaningful appellate review by not placing her reasons for issuing the final PFA order on the record.  **See id**. at 15.  Grose's argument, however, consists principally of derogatory statements toward Goodall and the trial court, **see** Grose's Brief at 14 (asserting the trial court assisted in Goodall's lies), and to the extent he cites any legal authority, he engages in mere "issue spotting" without developing a cogent argument.  Therefore, we conclude that Grose's first issue is waived.  **See Elliot-Greenleaf**, 255 A.3d at 542; **Coulter**, 94 A.3d at 1088.[3]

_____

[2] The quote which Grose attributed to **R.G.** does not appear in that case.

[3] Even if not waived, we would note that, at the hearing, the trial court started to explain the issues it found relevant at the hearing, but Grose continually interrupted.  **See** N.T., 5/19/25, at 71-79.  Moreover, the court provided a summary of its findings and legal conclusions in its Rule 1925(a) opinion, wherein it credited Goodall's testimony that "[Grose] was continuing to show up at her home unexpectedly[ and] would peer into the windows on the side
*(Footnote Continued Next Page)*

In his second issue, Grose asserts that Goodall repeatedly called the police during custody disputes with him, fabricated her testimony, misused the PFA system, and committed criminal acts, including unsworn falsification, false reports, and retaliation against a party. *See* Grose's Brief at 17. This claim goes to the credibility of Goodall's testimony. As noted above, this Court defers to the credibility determinations of the trial court, *see Kaur*, 259 A.3d at 509, and we decline his invitation to reweigh the evidence in his favor. *See* Trial Court Opinion, 7/22/25, at 3, 10. Thus, Grose's second issue merits no relief.

In his third and fourth issues, Grose asserts that the trial court mischaracterized one of the videos played by Goodall when it suggested that he had a real knife or machete while standing outside Goodall's window, and that the court then "created a false record" to minimize the testimony the "machete" was a toy. Grose's Brief at 11-13, 17. These issues lack any merit

_____

and back of her home and would attempt to let himself into the home by turning the doorknob." Trial Court Opinion, 7/22/25, at 3. The court also credited Goodall's testimony that these actions were "alarming" in light of past incidents of physical abuse. *See id*. As the court explained:

> [Grose] engaged in a course of conduct which placed [Goodall] in reasonable fear of bodily injury.[ Goodall] described [Grose's] conduct as "alarming" and cause[d] her to feel "anxiety" and be "scared." Due to the prior abuse history[, Goodall] was reasonably "afraid that this behavior [would] escalate."

*Id*. at 10 (record citations omitted). Thus, we discern no merit to Grose's contention that the trial court impeded meaningful appellate review of his sufficiency of the evidence claims, nor would we disturb the trial court's conclusions of law.

because the trial court acknowledged the machete was a toy and not a real weapon. *See* N.T., 5/19/25, at 72-73; Trial Court Opinion, 7/22/25 at 14.

Grose's fifth issue relates to the trial court's admission and review of police reports. Grose contends that the trial court's consideration of prior police reports violated Pa.R.E. 401 through 403. *See* Grose's Brief at 8-10.[4] Grose claims the trial court opinion misrepresented his agreement to admit the police reports for the limited purpose of asking whether Goodall could point to any police report in which she told police he physically harmed her. *See id*. He contends the trial court "fabricated" the notion that he wanted to admit the police reports for any purpose. *Id*. at 9.

Pennsylvania Rule of Evidence 103 states:

A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion in limine; and

(B) states the specific ground, unless it was apparent from the context . . .

Pa.R.E. 103(a)(1); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *E.K. v. J.R.A.*, 237 A.3d 509, 522 (Pa. Super. 2020).

_____

[4] Although Grose does not articulate the substance of Rules 401 through 403, or how they preclude the prior police reports, we are aware Rules 401 through 403 govern the general standards that to be admissible, evidence must be relevant, and, even if relevant, not unfairly prejudicial. *See* Pa.R.E. 401-403.

The trial court concluded Grose waived this issue by insisting it consider the police report and failing to object. *See* Trial Court Opinion, 7/22/25, at 11.

A review of the record confirms that Grose waived this issue, as established in the following exchange during Grose's cross-examination of Goodall:

> Mr. Grose: Did you ever call the police for any abuse that I've -- you alleged that I've done.
>
> Ms. Goodall: Yes, I have. Plenty of times. That's why I have plenty of police reports here. . . .
>
> * * * *
>
> Mr. Grose: So you're saying you have police reports of you reporting me abusing you or doing something to you?
>
> Ms. Goodall: Yeah. I have the police reports of you harassing me. Plenty of times. There is police reports where the police strongly advised that I get a PFA, because they know you.
>
> ***Mr. Grose: Can? Can? Can you show that police report to the [c]ourt[]?***
>
> Ms. Goodall: Let's see. Which one is it where he said?
>
> ***THE COURT: Do you mean the six of them that she has?***
>
> ***Mr. Grose: Yes.***
>
> THE COURT: Is that? Okay.
>
> Ms. Goodall: He. Wow. Can you give the --
>
> ***THE COURT: Do you want me to look at them, sir?***
>
> Ms. Goodall: -- here is one.
>
> ***Mr. Grose: Yes.***
>
> THE COURT: Okay.

Ms. Goodall: We can.

Mr. Grose: For any like abuse or --

THE COURT: Well --

Mr. Grose: -- stalking.

***THE COURT: -- if I.  If I look at them, I look at them.***

***Mr. Grose: Correct.***

***THE COURT: Okay.***

***Mr. Grose: Okay***.

N.T., 5/19/25, at 40-41 (emphasis added; some capitalization omitted).

Instantly, the record shows that Grose agreed when the trial court asked if it wanted him to review the police reports, and he did not object when the court cautioned that it would look at them in their entirety.  Therefore, Grose has not preserved an evidentiary challenge under Pa.R.E. 401-403, and we will not address this waived issue.  ***See*** Pa.R.E. 108; Pa.R.A.P. 302(a); ***E.K.***, 237 A.3d at 522.

In Grose's sixth issue, entitled "selective evidentiary standard," Grose contends that the trial court allowed Goodall to introduce dismissed reports (apparently referring to the police reports), but he was "denied reference to the Delaware County custody order."  ***See*** Grose's Brief at 13-14.  Aside from the issue of the police reports, discussed above, Grose points to no part of the record where the trial court precluded him from referencing the custody order or where he objected to the preclusion of the Delaware County custody order. This Court will not act as Grose's counsel to develop, and attempt to consider, a vague, undeveloped, and likely waived argument.  ***See Elliot-Greenleaf***,

255 A.3d at 542; *Coulter*, 94 A.3d at 1088; *see also* Pa.R.E. 108; Pa.R.A.P. 302(a); *E.K.*, 237 A.3d at 522. Thus, we will not consider Grose's sixth issue.

Similarly, in his seventh issue, Grose asserts that the trial court improperly nullified the Delaware County custody order and blocked his custody time with his and Goodall's child. *See* Grose's Brief at 16. Grose's six-line argument only refers to the authority of the court to enter a temporary custody order in conjunction with a final PFA order, *see* 23 Pa.C.S.A. § 6108(a)(4), and does not specify any term of the Delaware County custody order allegedly impeded by the PFA order. Grose's seventh issue is too undeveloped for review, and we will not consider it. *See Elliot-Greenleaf*, 255 A.3d at 542; *Coulter*, 94 A.3d at 1088.

In his eighth issue, Grose asserts that the trial court refused to hear his motion to dismiss "in retaliation against [him] for filing [the motion] *pro se*" and in violation of his constitutional rights to access to the courts. *See* Grose's Brief at 10. Grose's three-sentence argument focusing on the trial court's statement that "it had no choice" but to proceed to a hearing, not only ignores the context in which the trial court made that statement, but misstates the reasoning of the court, namely, that the court had no choice to proceed where the averments in Grose's motion to dismiss raised factual disputes that required resolution at the hearing. *See* N.T., 5/19/25, at 5 (noting that the allegations in Grose's motion to dismiss needed to be established by evidence); Trial Court Opinion, 7/22/25, at 12. Because the record belies Grose's assertions, no relief is due on Grose's eighth issue.

Grose's ninth issue accuses the trial court of bias based on additional discussions on Grose's motion to dismiss. *See* Grose's Brief at 15-16. Specifically, the court stated Grose's averments there were no police reports or criminal records involving domestic violence filed against him were "[i]rrelevant" until the trial court heard testimony, after which the following exchange occurred:

> Mr. Grose: I mean you're saying it's irrelevant. But if I choked, or hit or harmed someone, I would be arrested for that.
>
> THE COURT: Not necessarily, sir.

*See* N.T., 5/19/25, at 6 (some capitalization omitted). While Grose baldly asserts that the trial court showed bias toward him as a *pro se* litigant while excusing Goodall from the need to corroborate her allegations, we discern no support for Grose's baseless characterization and accusations. Thus, Grose's ninth issue fails.

In his tenth and final issue, Grose asserts that the trial court violated his right to be present for judgment and hear an explanation for the court's decision—is predicated on his allegations that the trial court ejected him from the courtroom before issuing a ruling on the final PFA order. The record simply does not bear out any Grose's allegations, and, to the contrary, shows that Grose continually interrupted the court as it began to explain its view of the

issues raised at trial. *See* N.T., 5/19/25, at 71-79. This frivolous issue merits no further discussion.[5]

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2026

_____

[5] We acknowledge that Grose's last five issues attempted to show bias in favor of Goodall and against him when the trial court refused to accept his claims that Goodall was incredible and misused the PFA proceedings in retaliation for his obtaining a Delaware County custody order. We reiterate that "[a]ssessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *Smith obo M.T. v. Thomas*, 328 A.3d 1121, 1124 (Pa. Super. 2024) (internal citation and quotation marks omitted). We remind Grose that the mere fact that the court ruled against a party does not show bias, prejudice, and unfairness, *see generally Ware v. U.S. Fid. & Guar. Co.*, 577 A.2d 902, 904 (Pa. Super. 1990). Moreover, as an appellant, Grose is certainly entitled to argue the trial court erred, but we strongly disapprove of his repeated use of inflammatory language against the trial court.